Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7105 | **DATE** | 5/22/2000 |
| **CASE TITLE** | LEONARD J. LACOUR vs. TIME WARNER, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order: For the forgoing reasons, the Court grants defendants' motion to dismiss counts II and III without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 24 2000 date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 33 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | MAY 24 2000 date mailed notice | |
| CG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD J. LACOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Ronald A. Guzman |
| | ) |
| TIME WARNER INC.; | ) No. 99 C 7105 |
| WARNER BROS.; WARNER BROS. | ) |
| PICTURES, INC.; TIME WARNER | ) |
| ENTERTAINMENT COMPANY L.P.; | ) |
| WARNER COMMUNICATIONS INC.; | ) |
| WARNER/SUNSET; CPP/BELWIN, INC.; | ) |
| D/B/A/ WARNER BROS. | ) |
| PUBLICATIONS; WARNER/CHAPPEL | ) |
| MUSIC, INC.; ATLANTIC RECORDING | ) |
| CORPORATION; ZOMBA RECORDING | ) |
| CORPORATION; JIVE RECORDS; | ) |
| ZOMBA SONGS, INC.; R. KELLY; | ) |
| R. KELLY PUBLISHING, INC.; RUMOR | ) |
| RECORDS; JOHN AND JANE | ) DOCKETED |
| DOES 1-5, INDIVIDUALS; AND JOHN | ) |
| AND JANE DOES 6-10, BUSINESS | ) MAY 2 4 2000 |
| ENTITIES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pending is defendants' motion to dismiss Counts II and III of the First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend that Counts II and III, which allege federal and state unfair competition, fail as a matter of law because they are preempted by the Copyright Act. For the reasons set forth below, the motion is granted.

1

33

## BACKGROUND

The subject of this action is the hit song "I Believe I Can Fly" ("the Kelly Version"). Defendant R. Kelly first recorded the Kelly Version in August 1996. It catapulted to hit status as the inspirational theme song for the children's movie "Space Jam," starring Michael Jordan, released in November 1996. (Compl. at ¶ 24.)

Approximately three years after the first recording and worldwide release of the Kelly Version, Plaintiff Leonard LaCour ("LaCour") has come forward alleging that he is the sole and original author of a copyrighted musical composition also entitled "I Believe I Can Fly" ("the LaCour Version").[1] (*Id.* at ¶ 22.) LaCour alleges that defendants obtained access to the LaCour Version prior to the composition of the Kelly Version. (*Id.* at ¶ 25.) LaCour also claims that R. Kelly copied the LaCour Version without his permission and alleges that the Kelly Version is derived from, and substantially similar to, the LaCour Version and therefore intentionally infringes his copyrights. (*Id.* at ¶¶ 26-28, 32-33, 35.)

LaCour also alleges that defendants have made false and misleading representations to the consuming public by giving R. Kelly attribution credit for being the sole and original author of the Kelly Version. (*Id.* at ¶¶ 39-40.) LaCour alleges that these representations are likely to confuse and deceive consumers and the public by creating a false impression or belief that R. Kelly is the sole and original author of the song. (*Id.* at ¶¶ 38, 41.) LaCour claims defendants have damaged him by denying him credit, and thus the fame and recognition he deserves among the public for his original authorship in the Kelly Version.

---

[1] LaCour claims to hold at least two copyright registrations for the work: SR-234-623 and SR-239-245. (Compl. at ¶ 23.)

(*Id.* at ¶ 42.) Further, LaCour claims that defendants have been unjustly enriched and have unlawfully profited from their wrongdoing. (*Id.* at ¶ 44.)

In Count I of the First Amended Complaint LaCour alleges copyright infringement under 17 U.S.C. § 501(a). In Count II, LaCour alleges federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). In Count III, LaCour alleges unfair competition under the laws of the State of Illinois, namely Section 2 of the Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT., 505/2 ("CFDBPA"), and Section 2(2), (5), and (12) of the Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510/2, 5 and 12 ("UDPTA").

In Count I, LaCour alleges that defendants infringed his copyright by copying and deriving the Kelly Version of "I Believe I Can Fly" from the LaCour Version. LaCour alleges his rights of copying, distribution, performance, and display were infringed by every copy of the Kelly Version made, published, played, displayed, promoted, distributed, and/or sold whether in the form of motion pictures, records, tapes, compact disks, video tapes, sheet music, promotional literature, or other materials. (Compl. at ¶¶ 26, 32-33, 38.)

In Count II, LaCour realleges Count I's charges. Moreover, Count II reads: "Defendants have caused to be listed in the credits . . . representations that Kelly is the sole and original author of the Kelly Version. The above-described representations . . . are false and misleading." (*Id.* at ¶ 38, 39.) Furthermore, LaCour alleges the false representations "are likely to cause confusion among and deceive the public . . . and are likely to, and have, actually damaged LaCour in that he is being denied credit and recognition among the public for his original work of authorship in the Kelly Version." (*Id.* at ¶¶ 41, 42.) LaCour asserts

3

that these actions constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

In Count III, LaCour makes identical allegations, the only difference being that LaCour asserts defendants' actions constitute unfair trade practices under the UDTPA and the Illinois CFDBPA. Defendants now move to dismiss Counts II and III of the First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that these counts fail as a matter of law because they are preempted by Section 301 of the Copyright Act.

## DISCUSSION

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In deciding a motion to dismiss, a court must assume all facts alleged in the complaint to be true, must construe the allegations liberally, and must view the allegations in the light most favorable to the plaintiff. *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir. 1987).

Dismissal is proper if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal is also proper if the complaint fails to allege a necessary element required to obtain relief. *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

Defendants argue that Counts II and III are merely Count I restated using language sounding in unfair competition and should therefore be dismissed as being preempted by

4

section 301(a) of the Copyright Act.[2] Section 43(a) of the Lanham Act[3] "prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product." *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995). The UDPTA[4] and CFDBPA[5] also

---

[2]The Copyright Act, 17 U.S.C. § 301(a), provides that copyright law exclusively governs "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship that are fixed in a tangible medium of expression and come-within the subject matter of copyright as specified by Sections 102 and 103."

[3]The Lanham Act, 15 U.S.C. § 1125(a), provides in relevant part:
Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

[4]The UDPTA, 815 ILL. COMP. STAT. 510/2, 5, 12, provides in relevant part:
A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, users, benefits or quantities that they do not have . . . or (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

[5]The CFDBPA, 815 ILL. COMP. STAT. 505/2, provides in relevant part:
Unfair methods of competition and unfair or deceptive acts or trade practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby.

prohibit such misrepresentations as unfair and deceptive trade practices.

LaCour claims that by excluding his name from the credits, defendants have made false and misleading representations regarding authorship of the Kelly Version. In so doing, LaCour alleges a practice termed "reverse passing off." Reverse passing off involves the false designation of the origin of a product and typically occurs when 'B' (the wrongdoer) sells 'A's' product under 'B's' name. *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F 3d 775, 780-78 1 (2d Cir. 1994). However, reverse passing off may also occur in situations where a "defendant markets a product directly derived from the plaintiff's product but mislabels that product to mask the product's origin." *Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1046 (N.D. Ill. 1998). Thus, 'B' is selling 'B's product and representing to the public that it is 'B's; however, 'B's product is derived from 'A's product. *Id.* The essence of the harm in a reverse passing off case is that "the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981).

### I. Count II

Defendants argue that when a work is allegedly copyrighted, the Copyright Act preempts a reverse passing off claim under the Lanham Act. However, the question whether one federal law takes precedence over another does not implicate the Supremacy Clause; therefore, preemption is not the applicable doctrine in these circumstances. *See Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583 (7th Cir. 1999) (Railway Labor Act and

Employee Retirement Income Security Act); *see also United States v. Estate of Romani*, 523 U.S. 517 (1998) (Tax Lien Act and federal priority statute). Rather, "[t]he choice between two federal statutes requires an analysis of both, to see if they are indeed compatible or if they can be harmonized, and if they are incompatible to decide which one Congress meant to take precedence." *Coker*, 165 F.3d at 584. Therefore, the Court considers whether the Copyright Act limits a plaintiff's right to seek redress under the unfair competition prohibition in the Lanham Act when the subject matter has been copyrighted.

Reverse passing off claims are ordinarily cognizable under Section 43(a) of the Lanham Act. *Hoopla Sports & Entertainment, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 351 (N.D. Ill. 1996); *Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.*, No. 93 C 20244, 1994 WL 606171, at *3 (N.D. Ill. Oct. 24, 1994); *see also Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203, n.1 (7th Cir. 1990). In the context of reverse passing off in the arts and entertainment industries, the Lanham Act has been used to prevent "the misappropriation of credit properly belonging to the original creator." *Waldman*, 43 F.3d at 780 (quoting Restatement (Third) of Unfair Competition § 5, cmt. (c)) (writer who could not sue another writer for copyright infringement could state a claim under section 43(a)); *see also Montoro*, 648 F.2d at 605 (an actor could state a claim under Section 43(a) when his name was replaced with another actor's in a motion picture's credits).

However, the Copyright Act provides that federal copyright law exclusively governs "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified

7

by Sections 102 and 103." 17 U.S.C. § 301(a). The statute specifies that it does not annul or limit any rights or remedies under any other federal statute. 17 U.S.C. § 301(d). Further, in his interpretation of Section 301, Professor Nimmer has stated that "the current Copyright Act does not in any manner repeal or otherwise affect other federal statutes that may in some degree overlap with the Copyright Act . . . such statutes include . . . the Lanham Act." 17 U.S.C. § 301(d); Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT [hereinafter "NIMMER"] § 1.01[D], at 1-66.5 (1999).

However, Professor Nimmer specifically recognizes that courts have used Section 301 of the Copyright Act to limit a plaintiff's right to seek redress for reverse passing off under the Lanham Act. *See* NIMMER, § 1.01[D], at 1-66.5 (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990) ("We decline to expand the scope of the Lanham Act to cover cases in which the Federal Copyright Act provides an adequate remedy."); *see also Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995) ("'[w]e reject . . . attempt[s] to convert all copyright claims into Lanham Act violations'") (quoting *Kregos v. Associated Press*, 937 F.2d 700, 711 (2d Cir. 1991)). These courts reason that infringement of a copyrighted work necessarily means that the ownership of that work is misrepresented and that consumers of the offending work are potentially confused as to its origin. *Goes Lithography*, 26 F. Supp. 2d at 1047. They have therefore held that when there is little or no likelihood of confusion adequate relief is available under the Copyright Act; thus, a remedy under the Lanham Act's unfair competition provision is redundant and unnecessary. *Id.*

In *Shaw*, the plaintiff was the writer of a television pilot script entitled "The Equalizer." 919 F.2d at 1355. Plaintiff entered into an option contract with one of the

defendants, an NBC executive, to develop the pilot into a television series. *Id.* NBC declined to purchase the script and all rights reverted to the plaintiff. *Id.* Defendant left NBC and began working for Universal Television, where he wrote a television series treatment also entitled "The Equalizer" which Universal developed into the series produced and broadcast on CBS. *Id.* The plaintiff sued defendant for copyright infringement and reverse passing off under Section 43(a) of the Lanham Act. *Id.* The Ninth Circuit affirmed the district court's dismissal of the Lanham Act claim and declined to expand the scope of Section 43(a) to cover a claim of reverse passing off which was based solely on the substantial similarity of the work at issue. *Id.* at 1364. "[The Ninth Circuit has] implicitly limited the 'reverse passing off doctrine to situations of bodily appropriation." *Id.*; *see also Cleary v. News Corp.*, 30 F.3d 1255, 1261 (9th Cir. 1994); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1438 (9th Cir. 1993). For cases of mere substantial similarity, the court reasoned the likelihood of confusion was minimal; thus, the federal copyright law provided an adequate remedy. *Shaw*, 919 F.2d at 1364-65.

In contrast to the Ninth Circuit, the Second Circuit has held that likelihood of confusion, and thus a claim for reverse passing off under the Lanham Act, may exist when the works at issue are substantially similar, but the offending work is not a bodily appropriation of the copyrighted work. *Waldman*, 43 F.3d at 784. However, like the Ninth Circuit, "[a]ware that nearly every copyright-based claim involves a charge of improper failure to credit a purported author, the Second Circuit has limited the extent to which a copyright-based claim may support a Lanham Act claim." *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (citing *Lipton*, 71 F.3d at 473-74). The Second Circuit has held

that mere copyright infringement and the presence of a false copyright notice alone are not enough to support a claim of reverse passing off under Section 43(a). *See Lipton*, 71 F.3d at 473 (plaintiff could not state a claim under Section 43(a) where defendant manufactured and sold unauthorized posters, t-shirts, and other products, based on plaintiffs copyrighted compilation, with false notice of copyright); *see also Kregos*, 937 F.2d at 710-11 (plaintiff could not state a claim under Section 43(a) where defendants unlawfully copied plaintiffs pitching statistics form and published their derivative form with false notice of copyright).

Further, the Second Circuit has stated that although reverse passing off may exist where two works are substantially similar, in order for the Lanham Act to apply to a copyright-based claim:

> an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from "some affirmative act whereby [defendant] falsely represented itself as the owner."

*Weber*, 63 F. Supp. 2d at 463 (quoting *Lipton*, 71 F.3d at 473-74); *see Kregos*, 937 F.2d at 710 (Second Circuit suggests that such an affirmative act might have existed "if [defendant] unfairly competed with [plaintiff] by falsely claiming that its form was originated by some well-known baseball player.") This need to make a greater showing to find liability under the Lanham Act "is analogous to the preemption rule that a state law claim requires an 'extra element,' beyond those tracing to any copyright, that 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Weber*, 63 F. Supp. 2d at 464 (quoting *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993)).

LaCour does not prevail under either the Ninth Circuit or the Second Circuit test.

Under the Ninth Circuit's stricter bodily appropriation test, absent a wholesale taking of the LaCour Version, defendants cannot be held liable for reverse passing off under the Lanham Act. Under the Second Circuit's more permissive substantial similarity test, defendants cannot be held liable for reverse passing off without evidence of an affirmative act of misrepresentation akin to that required under a state preemption analysis. Neither test is satisfied by the facts in this case. LaCour does not allege a wholesale appropriation of his work; rather, he merely alleges that the Kelly Version is derived from and substantially similar to the LaCour Version. Thus, there is no reverse passing off under the bodily appropriation test. Further, LaCour does not provide evidence of any affirmative misrepresentations made by defendants that change the nature of the action so that it is qualitatively different from the copyright infringement claim. Thus, there is no reverse passing off under the substantial similarity test.[6] (*See infra* discussion of Count III.)

---

[6] A 1995 journal article compared both tests and found that the Ninth Circuit's bodily appropriation test may offer the best approach. "The bodily appropriation test provides a means of protecting producers from having their products sold under another name, while respecting the balance drawn by the patent and copyright laws." Randolph S. Sergeant, *Building Reputational Capital: The Right of Attribution Under Section 43 of the Lanham Act*, 19 COLUM.-VLA J.L. & ARTS 45, 82 (1995) (providing an insightful look into the right of attribution reviewing the scope of the right in light of the goals of trademark, copyright and patent law). The bodily appropriation test is narrow and in keeping with the goals of the Lanham Act: it finds a violation of the right of attribution only when the defendant has taken plaintiff's actual product. Such a wholesale violation harms the creator's potential reputation and thereby harms consumers in that there will be reduced incentives to creators if they are not properly attributed for their products. Thus, the bodily appropriation test ensures that creators are only given a protectable right where it would ultimately benefit consumers and not their own best interests. This narrow interpretation helps ensure that the Lanham Act will not be expanded in such a way that instead of promoting fair competition, it becomes a tool for reducing or eliminating competition to the consumer's ultimate detriment. In contrast, "[u]se of the substantial similarity test makes it likely that the right of attribution will erode the boundaries drawn by the patent and copyright laws. To the extent that the substantial similarity test is used to provide an additional remedy to patented or copyrighted products, it is an unnecessary doctrine." *Id.* at 79. This is because the substantial similarity test crosses over into the territory of the Copyright Act too readily and

The Seventh Circuit has not addressed the question whether the Copyright Act limits a plaintiff's right to seek redress under the unfair competition prohibition in the Lanham Act when the subject matter has been copyrighted. However, recent district court decisions considering this question within the Seventh Circuit analyze the question without reference to substantial similarity or bodily appropriation. These courts have compared a claim of reverse passing off under the Lanham Act to a reverse passing off claim under state law. In so doing, the courts have held that the cause of action for reverse passing off under the Lanham Act is no different in its requisite elements than a state cause of action for unfair competition under the UDPTA or the CFDBPA. *See Tensor Group. Inc. v. Global Web Sys., Inc.*, No. 96 C 4606, 1999 WL 617818, at *3 (N.D. Ill. Aug. 11, 1999); *Goes Lithography*, 26 F. Supp. 2d at 1047; *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 42 (N.D. Ill. 1996); *see also Weber*, 63 F. Supp. 2d at 464. Thus, the courts have analyzed reverse passing off claims brought under the Lanham Act using the same preemption standard applied to state reverse passing off claims. We adopt this approach here because such an approach does not seem unreasonable as all

---

extends rights without the balance of consumer benefit against creator rights embodied in the Copyright Act. *Id.* at 82. According to the author of this article:
> Three problems are created by the substantial similarity standard. First, this standard would capture not only defendants who attempt to steal plaintiff's reputational capital, but defendants who innocently engage in copying which is permissible under other intellectual property laws. Second, because consumers benefit from competing products in the marketplace, we often want to encourage copying of products or features of products which are not protected under the patent and copyright laws. Finally, the incentive effects of granting the creator rights to control the dissemination of "substantially similar" products were already considered in the Patent and Copyright Acts. Use of the substantial similarity test makes it likely that creators can use the right of attribution to block the introduction of competing products, when the intellectual property statutes have determined that such control should not be allowed.

*Id.* at 80.

12

three statutes seek to accomplish the same goal--the protection of consumers from confusion and deception arising from unfair competition.[7] Thus, our analysis of preemption of the state actions below resolves whether Counts II and III are displaced by the Copyright Act.

## II.  Count III

Defendants argue that when a work is allegedly copyrighted, the federal copyright law preempts a reverse passing off claim under the UDPTA and CFDBPA. There are three ways in which federal law may preempt state law in a given field of law. "Congress may preempt state law expressly by so stating in explicit terms on the face of the statute." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1318 (2nd Cir. 1990) (internal quotations omitted). Preemption may also occur when Congress intends that federal law occupy a given field. *See California v. ARC Am. Corp.*, 109 S.Ct. 1661, 1665 (1989). Finally, even if Congress has not occupied the field, "state law is nevertheless preempted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible." *Id.*

It is well settled that equivalent state causes of action are expressly barred under Section 301 of the Copyright Act if the Act already protects those rights. *Goes Lithography,*

---

[7]The Supreme Court has noted that Section 43(a) of the Lanham seeks to protect consumers and others from deception and unfair competition in the marketplace. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992), *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985). Similarly, the comments of the National Conference of Commissioners on Uniform State Laws note that the UDPTA is directed towards unfair competition and the prevention of consumer confusion and deception. 815 ILL. COMP. STAT. 5 10/2 (comments); *see also Phillips v. Cox*, 261 Ill. App. 3d 78, 81, 632 N.E.2d 668, 670, 198 Ill. Dec. 338, 340 (5th Dist. 1994). Likewise, the CFDBPA is directed towards conduct that defrauds or deceives consumers or others. *See Laughlin v. Evanston Hospital*, 133 Ill. 2d 374, 390, 550 N.E.2d 986, 993, 140 Ill. Dec. 861, 868 (1990).

26 F. Supp. 2d at 1047; *Alcatel USA, Inc. v. DGI Techs. Inc.*, 166 F.3d 772, 785 (5th Cir. 1999). The Seventh Circuit has established a two-pronged test to determine whether a state law claim is equivalent to one protected by the federal copyright law: (1) the work in which the right is asserted must be fixed in a tangible form and come within the subject matter of copyright as specified in Sections 102 or 103 of the Copyright Act, and (2) the right asserted must be equivalent to any of the rights specified in Section 106. *Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986); *see also Nash v. CBS, Inc.*, 704 F. Supp. 823, 832 (N.D. Ill. 1989).

The first requirement of the *Baltimore Orioles* test is met if the work at issue is fixed in a tangible medium and it comes within the subject matter of copyright. Copyrightable subject matter includes: literary works, musical works, dramatic works, pantomimes, choreographic works, pictorial, graphic, or sculptural works, motion pictures or other audiovisual works, sound recordings, architectural works, compilations, and derivative works. 805 F.2d at 674; 17 U.S.C. § 102, 103. LaCour does not dispute that the LaCour Version is fixed in a tangible medium or that it comes within the subject matter of copyright. Rather, LaCour argues that the rights he asserts are broader than the rights specified in Section 106.

Therefore, the issue becomes whether the second requirement of the *Baltimore Orioles* test is met. The requirement is met if the state law right asserted is "equivalent" to one of the rights granted by the Copyright Act. *See Nash*, 704 F. Supp. at 832. "A right under state law is 'equivalent' if it is violated by the exercise of any of the rights set forth in § 106." *Baltimore Orioles*, 805 F.2d at 676. Thus, "a right is equivalent to one of the rights

14

comprised by a copyright if it is infringed by the mere act of reproduction, performance, distribution or display." *Id.* at 677 (internal quotations omitted). To avoid preemption, a state claim must incorporate an "extra element" that changes the nature of the action so that it is qualitatively different from a copyright infringement claim. *Id.*

In reverse passing off claims, courts have held that an allegation of misrepresentation based solely on an alleged infringer's act of displaying, selling, or promoting the infringing work as his or her own creation does not qualitatively alter the nature of the infringement action enough to remove the state claim from the preemptive reach of Section § 301(a). *Marobie-FL, Inc. v. National Ass'n of Fire & Equip. Distribs. of Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997); *see Goes Lithography*, 26 F. Supp. 2d at 1048. Specifically, consumer confusion and deception, which LaCour alleges here, have been held to be inherently present in any copyright action and are therefore not considered extra elements that qualitatively alter the nature of a claim where they are asserted. *Goes Lithography*, 26 F. Supp. 2d at 1048. Further, courts have held that the Copyright Act preempts claims brought under the Illinois UDPTA and CFDBPA because, absent an affirmative representation about the origins of the work in question, the inherent misrepresentation that accompanies the unauthorized copying and reproduction of another's copyrighted work in a reverse passing off case without more is not enough to constitute a cause of action under either of these statutes. *See Goes Lithography*, 26 F. Supp. 2d at 1047; *Marobie FL. Inc.*, 983 F. Supp. at 1180 (IJDPTA); *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. Partnership*, 950 F. Supp. 896, 898 (C.D. Ill. 1997) (UDPTA); *Tensor Group*, No. 96 C 4606, 1999 WL 617818, at *2-3 (UDPTA and CFDBPA).

15

Proof that defendants made an affirmative misrepresentation is essential to avoid preemption. *Tensor Group*, No. 96 C 4606, 1999 WL 617818, at *2. The failure to allege affirmative misrepresentations about the origin of the work renders the state law claims identical to copyright infringement claims, and thus they are preempted by copyright law. *Id.*

This case involves the type of reverse passing off where 'B is selling 'B's' product and representing to the public that they are 'B's' although 'B' derived his product from A's product. That is, defendants are selling the Kelly Version and representing to the public that it is R. Kelly's work, which it is. However, LaCour alleges that the Kelly Version is substantially similar to and derived from the LaCour Version and that in failing to credit him with authorship, defendants are likely to confuse and deceive consumers. Professor Nimmer suggests that such a claim is preempted by the Copyright Act: "a claim that the . . . activity is actionable because B's product replicates A's . . . is in fact a disguised copyright infringement claim, and hence preempted." 1 NIMMER § 1.01 [B] [1] [e] at 1-24 n.110. Such a claim really asserts a violation of the reproduction and derivative rights protected by the copyright law. Thus, LaCour's claim that the Kelly Version replicates the LaCour Version is a disguised copyright infringement claim and thus preempted by the Copyright Act.

LaCour's allegations in Counts II and III--that defendants deceived consumers by misrepresenting R. Kelly as the sole and original author of the Kelly Version--are based solely on the fact that defendants have failed to credit LaCour as author of the LaCour Version on closing credits to the movie Space Jam, on sheet music, on promotional, and on other materials accompanying the sound recordings of the Kelly Version. LaCour does not allege any act of misrepresentation beyond this. The failure to award LaCour credit and any

16

resulting confusion or deception of consumers do not amount to affirmative misrepresentations about the origin of the Kelly Version. They represent nothing more than the inherent misrepresentation that accompanies unauthorized copying and reproduction of another's copyrighted work. This inherent misrepresentation is necessarily present in any copyright infringement action and is not an extra element that changes the nature of the claim so that it is qualitatively different from the copyright claim. Thus, Counts II and III merely restate the claim for copyright infringement in Count I.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss Counts II and III without prejudice.

**SO ORDERED**

ENTERED: 5/22/00

HON. RONALD A. GUZMAN
**United States Judge**